IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CLAYTON W. PEARCE, ) | |
| ) | |
| Plaintiff, ) | Case No. CV06-325-E-EJL |
| ) | |
| vs. ) | MEMORANDUM ORDER |
| ) | |
| SCIENCE APPLICATIONS INTERNATIONAL ) | |
| CORP., ) | |
| ) | |
| Defendant. ) | |
| ) | |

      Plaintiff Clayton W. Pearce ("Pearce") has brought the instant action against Defendant Science Applications International Corporation ("SAIC") alleging discrimination, retaliation, breach of contract, breach of implied covenant of good faith and fair dealing, and intentional and/or negligent infliction of emotional distress. Pending before the Court in the above-entitled matter is SAIC's motion to dismiss or in the alternative to stay and compel arbitration. SAIC argues that Pearce signed a mutual agreement to arbitrate claims prior to commencing his employment with SAIC and that the instant action was filed in violation of that agreement to arbitrate. Accordingly, SAIC urges the Court to dismiss the action or alternatively stay proceedings until arbitration can be completed. Pearce responds by arguing the agreement to arbitrate also included an option for mediation and that SAIC failed to mediate in good faith, thereby allowing Pearce to proceed with his claims in this forum.

      Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, these motions shall be decided on the record before this Court without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(2)(ii).

## Factual Background

In the spring of 2005, Pearce sought employment with SAIC. During the hiring process, Pearce signed a number of documents regarding the resolution of disputes arising out of Pearce's employment through arbitration. Chief among those documents was the Mutual Agreement to Arbitrate Claims ("Arbitration Agreement") which Pearce signed on March 21, 2005. The Arbitration Agreement provides, in pertinent part:

> **1.     Claims Covered by the Agreement:** SAIC and Employee will settle by arbitration all statutory, contractual and/or common law claims or controversies ("claims") that SAIC may have against Employee, or that Employee may have against SAIC or any of its officers, directors, employees or agents in their capacity as such or otherwise. Claims subject to arbitration include (i) claims for discrimination (including, but not limited to, age, disability, marital status, medical condition, national origin, race, retaliation, sex, sexual harassment, or sexual orientation); (ii) claims for breach of any contract or covenant (express or implied); (iii) claims for violation of any federal, state, or other governmental law, statute, regulation or ordinance; and (iv) tort claims (including, but not limited to, negligent or intentional injury, defamation and termination of employment in violation of public policy).
>
> Although SAIC's Employee Dispute Resolution Program provides for arbitration as the exclusive means for Employee to recover remedies for claims that he or she may have against SAIC, nothing in this Program prohibits Employee from filing a charge regarding his or her employment at SAIC with the U.S. Equal Employment Opportunity Comission (EEOC), a comparable state agency, or any other governmental regulatory body.
>
> * * *
>
> Should Employee file a charge with EEOC alleging a violation of one of the laws it enforces, his or her charge may be mediated under EEOC's Alternative Dispute Resolution Program if Employee, SAIC and EEOC agree to mediation. There is no cost to Employee or SAIC for this EEOC-sponsored mediation.
>
> * * *
>
> **6.     Exclusive Remedy:** Employee understands that Employee is waiving the right to seek remedies in court, including the right to a jury trial.

Pearce began his employment with SAIC in May 2005 as an Adolescent Substance Abuse Counselor. He was assigned to a station in Giessen, Germany. However, after only a few months, Pearce resigned from his position. Following his employment with SAIC, Pearce filed a discrimination charge with the EEOC as he was permitted to do under the Arbitration Agreement, and subsequently agreed to participate in mediation as offered by the EEOC's Alternative Dispute

Resolution Program. The mediation was scheduled for March 24, 2006 in Boise, Idaho. Both parties and their counsel arrived at the mediation and began sharing information. However, before serious negotiations began, SAIC announced they were leaving the mediation, but offered to resume negotiations in Pocatello. Several weeks later, Pearce learned that SAIC would not be coming to Pocatello, but desired to continue negotiations via telephone. On the date set for the telephonic mediation, SAIC did not call, and Pearce later learned that SAIC was unwilling to continue negotiations. On May 19, 2006, the EEOC issued Pearce a Notice of Right to Sue, and shortly thereafter Pearce filed his complaint in this Court.

### Discussion

The Federal Arbitration Act ("FAA"), 9 U.S.C. § § 1-16, was enacted to overcome judicial resistance to arbitration agreements and to place them on equal footing with other contracts. Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991). Its primary substantive provision provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (emphasis added). In addition, the FAA mandates courts to stay proceedings wherein any issue involved in the action is referable to arbitration, § 3, and allows for orders compelling arbitration where one party has failed, neglected, or refused to comply with the arbitration agreement, § 4. These provisions manifest a "liberal federal policy favoring arbitration agreements." Moses H. Cone Mem'l Hosp.l v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983).

"[T]he [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that the district court shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) (emphasis in original). "The court's role under the Act is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement

encompasses the dispute at issue." Chiron Corp. v. Ortho Diagnostic Systems, 207 F.3d 1126, 1130 (9th Cir. 2000).

Curiously, Pearce does not contest the validity of the Arbitration Agreement or whether it encompasses the disputes at issue. Pearce does not allege fraud, unconscionability, lack of consideration, or any other traditional defense to a valid contract. Rather, Pearce attempts to argue that this Court must hear his claims because if it did not, he would be left without a remedy.

In support of his argument, Pearce cites the recent Ninth Circuit case of McGinest v. GTE Service Corp., 360 F.3d 1103 (9th Cir. 2004). Pearce argues that because SAIC submitted affidavits and additional material with their motion, it should be treated as a motion for summary judgment rather than a motion to dismiss. In this context, Pearce argues, courts should be extremely cautious. The McGinest court said, "in evaluating motions for summary judgment in the context of employment discrimination, we have emphasized the importance of zealously guarding an employee's right to a full trial, since discrimination claims are frequently difficult to prove without a full airing of the evidence and an opportunity to evaluate the credibility of the witnesses." Id. at 1112. However, McGinest is not entirely on point. In McGinest, there was no arbitration agreement between the employer and employee as there is in this case. Moreover, the employee, Mr. McGinest faced a motion for summary judgment, which if granted would have had preclusive effect thereby barring him from other forums in which he may have sought relief. Indeed, the court feared that "when a court too readily grants summary judgment, it runs the risk of providing a protective shield for discriminatory behavior that our society has determined must be extirpated." Id. That is not a fear that this Court shares in this case. Here the parties have entered into an agreement to arbitrate their disputes. Pearce will not be denied a forum in which to resolve his disputes if this Court dismisses his action. "By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985).

It is undisputed that Pearce and SAIC entered into an agreement to arbitrate their disputes. It is also undisputed that the terms of the Arbitration Agreement cover each of Pearce's claims in

the instant action.  Pearce has failed to show this Court any reason why the Arbitration Agreement should be held to be invalid or unenforceable.  Thus, consistent with the national policy favoring enforcement of arbitration agreements, this Court must dismiss the instant action and compel the parties to seek resolution of their disputes via arbitration.

## ORDER

Based on the foregoing, and the Court being fully advised in the premises, it is **HEREBY ORDERED** that SAIC's Motion to Dismiss (Dkt. #5) is **GRANTED**.  Each of Pearce's claims are therefore dismissed and the parties are **HEREBY ORDERED** to proceed to arbitration pursuant to the terms of the Arbitration Agreement.

DATED:  **May 3, 2007**

Honorable Edward J. Lodge
U. S. District Judge